UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| AARON P. BRACE, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CIVIL NO. 1:18cv216 |
|  | ) |  |
| NANCY A. BERRYHILL, Acting | ) |  |
| Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) as provided for in the Social Security Act. 42 U.S.C. §416(I). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act

through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since November 6, 2013, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease; left elbow ulnar neuropathy; and, history of right shoulder surgery (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), as follows: lift, carry, push, and pull 20 pounds occasionally and ten pounds frequently; sit, stand, and walk, each, for six hours in an eight-hour workday; can remain in one position for at least 30 minutes, but would need to change positions occasionally throughout the day; no reaching overhead; no foot pedals; occasional fingering, handling, and feeling with the non-dominant hand, but no restrictions with the dominant hand; no ramps or stairs; no slippery or uneven surfaces; no dangerous machinery or unprotected heights; and no operating a motor vehicle as a condition of employment.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 18, 1979, and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act,

from November 6, 2013, through the date of this decision (20 CFR 404.1520(g)). (Tr. 23 - 35).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on January 3, 2019. On February 12, 2019, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be affirmed.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff claims a litany of impairments: lumbar degenerative disc disease, displacement of

intervertebral desk without myelopathy, lumbar herniated nucleus pulposus, spinal and foraminal stenosis, lumbar radiculopathy/sciatica, facet hypertrophy, thoracic radiculitis, cervical radiculopathy, cervicalgia, left elbow ulnar neuropathy, history of right shoulder surgery, hip pain, right knee pre-patellar bursitis, patella alta deformity, right knee crepitus with extension, right knee pain and swelling, headaches, kidney stones with a double J ureteral stent, dysphagia/gastritis, epidermal inclusion cyst on neck, and insomnia.

Plaintiff states that he has previously worked as a CNA, Pizza store manager, Pizza store worker, roofer and carpenter helper.

In support of remand, Plaintiff first argues that the VE's opinion concerning national numbers is the result of an arbitrary and defective methodology that cannot support the ALJ's Step 5 finding. Plaintiff argues that, essentially, the VE used an equal distribution methodology to allocate from the broader Standard Occupational Classification (SOC) categories to the narrower Dictionary of Occupational Titles (DOT) categories. Plaintiff states that the Seventh Circuit frowned upon this methodology in *Alaura v. Colvin*, 797 F. 3d. 503, 507-508 (7th Cir. 2015), *Browning v. Colvin*, 766 F.3d 702 (7th Cir. 2014), and *Chavez v. Berryhill*, 895 F.3d 962 (7th Cir. 2018). *Id*. Plaintiff's counsel states that he properly objected to the VE's national numbers, and proffered grounds that there was an insufficient foundation (Pl's. Br. 12).

In the present case, the ALJ posed a hypothetical to Robert L. Bond, an impartial VE, to determine whether jobs existed nationally that Plaintiff could perform (Tr. 98-102). The VE testified that given Plaintiff's age, education, work experience, and RFC, he would be able to perform the requirements of representative occupations such as call out operator (DOT 237.367-014), semi-conductor bonder (DOT 726.685-066), and counter clerk (DOT 249.366-010 (Tr.

5

101).

The Seventh Circuit has acknowledged the importance of VEs at ALJ hearings. As the Seventh Circuit has noted, ALJs regularly employ the services of VEs at Step 5 to determine whether a claimant retains work skills that can be used in other work and the specific occupations in which those skills may be used. *Taylor v. Colvin*, 829 F.3d 799, 801 (7th Cir. 2016); *Jentzen v. Colvin*, No. 14-cv-2029, 2016 WL 8672692, at *4 (N.D. Ind. Mar. 18, 2016). The Seventh Circuit has regularly upheld an ALJ's reliance on a VE to determine whether there is work that exists in significant numbers in the national economy that a claimant could perform where the hypothetical posed to the VE is based on substantial evidence. *Liskowitz v. Astrue*, 559 F.3d 736, 745–46 (7th Cir. 2009). The Seventh Circuit has also set a clear standard regarding the resolution of perceived discrepancies with the VE's testimony or methodology. In *Donahue*, the Seventh Circuit stated, "[i]f the basis of the VE's conclusions is questioned at the hearing, however, then the ALJ should make an inquiry (similar though not necessarily identical to that of Rule 702) to find out whether the purported expert's conclusions are reliable." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002).

Plaintiff relies on *Jentzen* to support his argument that the VE's methodology is flawed The District Court in *Jentzen* concluded that when questions surround the VE's testimony, an ALJ has a "duty to investigate further." *Jentzen*, 2016 WL 8672692, at *5. In the present case, at the January 2017 administrative hearing, the ALJ solicited jobs from the VE given a hypothetical that matched Plaintiff's RFC (Tr. 98-102). When given the opportunity to question the VE, Plaintiff's counsel asked the VE about his methodology (Tr. 105-108). After the VE's explanation of his methodology, Plaintiff's counsel objected to this methodology (Tr. 108). The ALJ

6

responded that he would consider Plaintiff's objection and rule on it as part of his ruling in the case (Tr. 108). The ALJ did so, and noted in his decision that Plaintiff questioned the VE regarding the methodology and sources he used in estimating the numbers of jobs given, and objected to the VE's testimony with regard to the numbers of jobs cited (Tr. 35). The ALJ noted that the VE provided an explanation, but Plaintiff would not accept the explanation as sufficient, and he asserted that a "rational basis" had not been established (Tr. 35). However, the ALJ noted that he found the VE's explanation to be satisfactory. *Id*.

The ALJ noted that Plaintiff did not object to the VE's qualifications to testify as an expert prior to his testimony (Tr. 35). While the ALJ acknowledged that there was some merit to Plaintiff's objection to the methodology in determining the number of jobs that exist in the national economy for each position, the ALJ stated that while he was admitting the VE's testimony, Plaintiff's argument affected the weight he would give the VE testimony (Tr. 35). The ALJ stated that the VE testified that, between the four examples of jobs he provided, there were approximately 140,000 positions nationally (Tr. 35). The ALJ noted that even if the methodology used created a significant margin of error as to the exact number of positions available, he found that the VE established that Plaintiff could perform a significant number of jobs (Tr. 35). The ALJ found no reason to dispute the VE's testimony, and overruled Plaintiff's objection (Tr. 35). Thus, the Commissioner argues that the record establishes that the ALJ followed the guidance of *Donahue* and *Jentzen*, and investigated further and determined that the VE's conclusions were reliable.

Plaintiff correctly notes the Seventh Circuit has criticized VE methodology in several recent cases. *See, e.g. Taylor v. Colvin*, 829 F.3d 799, at 802 (7th Cir.2016); *Alaura v. Colvin*,

7

797 F.3d. 503, 507-08 (7th Cir. 2015); *Voigt v. Colvin*, 781 F.3d 871, 879 (7th Cir. 2015); *Browning v. Colvin*, 766 F.3d 702, 708-09 (7th Cir. 2014); *Hermann v. Colvin*, 772 F.3d 1110, 1113-14 (7th Cir. 2014). Plaintiff primarily relies on *Alaura* to support his claim that an ALJ may not rely on VE methodology such as the equal distribution method. *Alaura*, 797 F.3d 503 at 507-08. In *Alaura*, the Seventh Circuit stated "[w]e need to say something about the vocational expert's conclusion," and went on to broadly criticize the "source and validity of the statistics that vocational experts trot out in Social Security disability hearings," and deemed the VE's methodology as "preposterous," and also bemoaned the outdated nature of the DOT. *Id.* at 507-08 (7th Cir. 2015). However, the *Alaura* Court did not overturn the controlling precedent of *Donahue*, did not offer what methodologies (underpinned by what principles) would satisfy the Court, and did not provide a bright line rule as to when remand was necessary based on defective VE methodology. *See id.* Further, Plaintiff offers no data to suggest that the VE's numbers were not accurate. Thus, Plaintiff's reliance on *Alaura* is misplaced, and this Court must abide by the ruling in *Donahue*.

Other District Courts within the Seventh Circuit, while acknowledging the complaints of the Seventh Circuit, have explained, "the [Seventh Circuit] has not explicitly reversed an ALJ's conclusion simply because the vocational expert's testimony did not explain where his statistics were derived." *Hoffman v. Colvin*, No. 15-cv-940, 2016 WL 5107063 at *6 (E.D. Wis. Sept. 20, 2016). The District Court in *Hoffman* identified the criticism in *Alaura* as "classic dicta." *See id.* Without any holding reversing *Donahue*, District Courts have refused to remand solely for challenges to VE methodology, citing a lack of guidance from the Seventh Circuit: "[Plaintiff's] argument [about VE methodology] is well taken. But [Plaintiff's] criticism of the VE's

8

methodology is not a basis for remand until appellate precedent instructs that relying on the methodology is reversible error." *Weir v. Colvin*, No. 15-cv-532, 2016 WL 4083524, at *3 (W.D. Wis. Aug. 1, 2016) (affirming ALJ's decision). Had the Seventh Circuit intended the equal distribution method to be ruled impermissible, it would have said so. Thus far, it has not.

In the present case, the ALJ acknowledged counsel's objection to the VE's methodology, he considered the merits of the objection, and he ultimately found that even if there were a margin of error in the VE's job numbers, there was still a significant number of jobs remaining (Tr. 35). The ALJ thus acted in accordance with *Donahue*: when questions arose about the VE's methodology, the ALJ did not simply accept the job numbers provided by the expert, but further investigated and explained in his decision why he accepted the VE's opinion (Tr. 35). Accordingly, there is no basis for remand on this issue.

Next, Plaintiff argues that the ALJ erred in failing to give substantial credibility to Plaintiff due to his strong work history. Plaintiff argues that in evaluating his symptoms, the ALJ failed to give substantial credibility to Plaintiff due to his work history in accordance with *Stark v. Colvin*, 813 F.3d 684 (7th Cir. 2016). However, as the Commissioner notes, the ALJ did consider Plaintiff's work history, along with a host of factors, including Plaintiff's statements to medical providers, his hearing testimony, and his reported activities of daily living. For example, in evaluating the symptoms of Plaintiff's alleged physical impairments, the ALJ noted that three years after his initial onset date, Plaintiff reported that he liked to hunt and kayak (Tr. 32, 531-532). The ALJ also noted that Plaintiff's most recent medical visits conflicted with his hearing testimony regarding his functional limitations (Tr. 31). For example, the ALJ noted that Plaintiff stated he had neck pain (cervicalgia) during his March 2016 visit with Dr. Lazoff, but no

9

related findings were made (Tr. 31, 535-536). The ALJ also noted that although Plaintiff's testimony suggested significant difficulties in neck range of motion, along with daily and limiting headaches, through his most recent visit on January 3, 2017, no specific complaints of headaches were noted, and examination findings did not reflect range of motion deficits (Tr. 31, 528-541, 545-606). In addition, the ALJ noted that Plaintiff specifically denied headaches during his September 10, 2016, emergency room visit (Tr. 31, 545-547). The ALJ noted that given Plaintiff's testimony that he experienced migraine headaches when looking down for only 15 minutes, and that he can be bedridden for the remainder of the day when this occurs, one would expect some related complaints and findings, and one would also expect additional neurological consultation; however, the ALJ noted that this had not occurred (Tr. 31). This clear evidence conflicts with Plaintiff's hearing testimony, and supports the ALJ's evaluation of Plaintiff's symptoms.

As for his work history, Plaintiff seems to state that the ALJ did not acknowledge his work history at all, or the fact that Plaintiff returned to work after shoulder surgery and ureteral shunt placement. For the reasons set forth below, Plaintiff's argument fails.

Plaintiff relies on *Stark* to support his argument that the ALJ erred when he failed to consider Plaintiff's work history, but *Stark* held that an ALJ is not statutorily required to consider a claimant's work history, but "a 'claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.'" *Stark*, 813 F.3d 684, 689, citing *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir.2015) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir.1983)). In *Stark*, the court noted stated that "[i]n assessing Stark's credibility about the disabling effects of her pain, the ALJ should have acknowledged Stark's

efforts to continue work while experiencing significant pain and undergoing numerous surgeries and other treatments to relieve it. *Stark*, 813 F.3d 684, 689. Unlike *Stark*, in the present case, the ALJ did acknowledge Plaintiff's work history when evaluating his symptoms. For example, the ALJ noted that Plaintiff's wife testified that prior to his work-related injury and alleged disability onset date in 2013, Plaintiff worked daily, along with overtime when available (Tr. 27). The ALJ also noted that Plaintiff returned to work after his 2013 injury (Tr. 27). The ALJ also noted that Plaintiff reported he was working "light duty" in 2014, after his alleged onset date, and inconsistent with his testimony that he had not worked since 2013 (Tr. 28). These statements show that, although he was not statutorily required to do so, the ALJ considered Plaintiff's work history when evaluating his symptoms.

Despite finding that the evidence did not fully support Plaintiff's subjective complaints, the ALJ nonetheless assessed a RFC finding with numerous physical limitations (Tr. 25). Plaintiff's arguments essentially ask this Court to re-weigh the evidence and resolve conflicts of fact that the ALJ already reasonably resolved, which is improper on appeal. *Powers v. Apfel*, 207 F.3d 431, 434-35 (7th Cir. 2000). The ALJ's symptom evaluation was not patently wrong and there is no basis for remand.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.
Entered: March 28, 2019.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court